USCA1 Opinion

 

 December 22, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1637 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. SAMUEL MANDARELLI, III, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ ____________________ Stephen H. Mackenzie for appellant. ____________________ Margaret D. McGaughey, Assistant United States Attorney, with _______________________ whom Richard S. Cohen, United States Attorney, and Michael M. DuBose, ________________ _________________ Assistant United States Attorney, were on brief for appellee. ____________________ ____________________ BREYER, Chief Judge. In 1989 Samuel J. _____________ Mandarelli, III pled guilty to a charge of possessing a gun unlawfully (as a previously convicted felon). 18 U.S.C. 922(g), 924(a)(2). The district court, following the then- current Sentencing Guidelines, imposed a sentence of twelve months in prison, followed by twenty-four months of supervised release. In 1992, after completing his term in prison, Mandarelli violated an important condition attached to his supervised release, namely, the condition that he "not commit another . . . crime." Mandarelli violated this condition 1) by assaulting an acquaintance, see Me. Rev. ___ Stat. Ann. tit. 17-A, 207, and 2) by giving his probation officer a false address, see 18 U.S.C. 1001. ___ Consequently, the district court revoked Mandarelli's supervised release and, again following the Guidelines, sentenced him to serve eighteen months in prison. Mandarelli appeals, claiming that the law forbids the court to sentence him (for his "supervised release" violation) to more than fourteen additional months in prison, the maximum he could have received under the Guidelines for his original (felon in possession of a firearm) offense. We find Mandarelli's argument unconvincing and affirm the district court's judgment. The relevant sentencing statute and the relevant Sentencing Guidelines give the district court adequate legal power to impose an eighteen month sentence. The statute, 18 U.S.C. 3583, is entitled "Inclusion of a term of supervised release after imprisonment." It says, in relevant part, that, if the sentencing court "finds . . . that the person violated a condition of supervised release," then the court may . . . revoke [the] term of supervised release, and require the person to serve in prison all or part of ______________ the term of supervised release without ________________________________________ credit for time previously served on ______ postrelease supervision . . . . except that [the person] may not be required to ___ serve more than . . . 2 years in prison _________ _______ if the [original] offense was a Class C __ _______ . . . felony . . . . 18 U.S.C. 3583(e)(emphasis added). Since Mandarelli's initial crime was a Class C felony, see 18 U.S.C. ___ 924(a)(2), 3559(a)(3), and the initial term of supervised release was twenty-four months, his eighteen month sentence satisfies both these requirements. The same statutory provision adds another requirement, namely that the new sentence be "pursuant to the . . . provisions of applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. 3583(e). Guidelines Chapter 7B, entitled "Probation and Supervised -3- 3 Release Violations" contains these "policy statements." Guidelines (policy statement) section 7B1.1 divides violations of conditions of supervised release into three categories, according to the seriousness of the "violating" conduct. It describes as "Grade B Violations" conduct that does not involve drugs, guns, or serious violence, but which constitutes an "offense punishable by a term of imprisonment exceeding one year." Guidelines (policy statement) section 7B1.3(a)(1) says that "[u]pon a finding of a Grade . . . B violation, the court shall revoke . . . supervised release." And, Guidelines (policy statement) section 7B1.4(a) says that in the case of a Grade B violation committed by a person in Criminal History Category IV, the "range of imprisonment" is twelve to eighteen months. The district court followed these Guidelines policy statements. It found that Mandarelli's condition- violating conduct fell within Grade B, see 18 U.S.C. 1001 ___ (five year maximum), and that Mandarelli's Criminal History placed him in Category IV. The court then noted the Guidelines conclusion, namely, a prison sentence of twelve to eighteen months. And, the court chose a sentence, eighteen months, at the top of this range. The court, then, -4- 4 would seem to have followed both the Guidelines "policy statements" and the statute that requires it to do so. Mandarelli does not challenge the court's "Grade B" or "Category IV" findings. But, he nonetheless makes two arguments challenging its conclusion. First, he points to a different statute, 18 U.S.C. 3565, entitled "Revocation of probation." That statute, in relevant part, says that if a "defendant violates a condition of probation," then, "the court may" revoke the sentence of probation and impose any other sentence that was available under Subchapter A at the time of the initial sentencing. 18 U.S.C. 3565. Mandarelli adds that Subchapter A, 18 U.S.C. 3553(a)(4),(b), describes the Sentencing Guidelines and instructs courts (normally) to impose Guidelines sentences. He says that the Guidelines applicable to his original (felon in possession) crime generated a sentencing range of eight to fourteen months. He concludes that the statute prohibits the court from imposing a sentence of greater than fourteen months. The fairly obvious flaw in this argument is that the statute to which Mandarelli points is about probation, _________ not about supervised release. Under the Sentencing Reform __________________ Act of 1984, "probation" is an alternative to prison; a ___________ -5- 5 defendant may not be sentenced both to probation and "at the ___ ____ same time to a term of imprisonment." 18 U.S.C. 3561(a). "Supervised release" is "part of" a prison sentence, to be served after imprisonment. 18 U.S.C. 3583(a). The _____ statutes treat the two similarly, but not identically. Compare 18 U.S.C. 3565(a)(2) (maximum sentence for _______ probation violation is maximum for underlying conviction) with 18 U.S.C. 3583(e) (maximum sentence for supervised ____ release violation depends on seriousness of violation, not on underlying conviction). Nothing in the statute books suggests that the "probation," rather than the "supervised release," statute governs this supervised release case. Mandarelli also points to a sentence in the Guidelines' "Introductory Commentary" to Chapter 7B, which says, Because these policy statements focus on the violation of the court- ordered supervision, this chapter, to the extent permitted by law, treats violations of the conditions of probation and supervised release as functionally equivalent. He argues that this sentence means the Guidelines policy statements automatically make applicable to supervised release the statutes that govern probation. We do not see how this could be so. For one thing, the quoted language -6- 6 purports to be a general description about the Guidelines that follow. It does not purport to supersede those following Guidelines; nor does it guarantee that, in every lawful respect, the Guidelines will treat probation violations and supervised release violations identically. For another thing, it contains a qualification, namely, "to the extent permitted by law," and, as we have just seen, the statutes treat violations of the two separately. Finally, the sentence appears in "commentary," i.e., Commission language that advises courts how to interpret or to apply the Guidelines themselves. See, e.g., United States v. ___ ____ _____________ Fiore, No. 92-1601, slip op. at 4 (1st Cir. Dec. 9, 1992). _____ Such language does not control the courts' subsequent actions to the same degree as do the Guidelines themselves, or as do the Guidelines "policy statements" that, as here, are statutorily vested with legal authority. Thus, were there a conflict between the introductory commentary and the Guidelines (policy statements) themselves, the latter, not the former, would govern. We note a final, non-legal, argument that Mandarelli makes. He points out that, normally, supervised release will be imposed after fairly long prison terms; hence, the statutory and Guidelines rules will not -7- 7 ordinarily give courts the power to impose longer prison terms for supervised release violations than for the original crime itself. His case (where the supervised release term is longer than his initial prison term), he says, is an anomaly. We are not certain about the extent to which Mandarelli's case is anomalous. The court apparently sentenced him to a top-of-the-range eighteen months because it believed his conduct while on supervised release, as revealed by the Presentence Report, showed he "was on the way to a course of conduct that ultimately would have had much more serious [criminal] consequences." Regardless, the Sentencing Commission, not this court, would seem the appropriate body to determine whether any anomaly exists and whether, or how, it might be corrected. The judgment of the district court is Affirmed. _________ *** See Slip Opinion for Appendix (excerpts from Sentencing Guidelines). -8- 8